UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

APRIL M RUSHING,

    Plaintiff,

v.                                       Case No.:  2:23-cv-1141-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

Plaintiff April Rushing challenges the Commissioner of Social Security's decision denying her application for disability benefits under 42 U.S.C. § 405(g). (Doc. 14 at 2.)[1] For the reasons below, the Commissioner's decision is affirmed.

## **I. Background**

The procedural history, administrative record, and law are summarized in the parties' briefs (Doc. 14, Doc. 15, Doc. 16) and not fully repeated here. In short, Rushing filed for benefits claiming she was disabled as of July 15, 2021. (Tr. 319.) In her application, Rushing alleged her disability stemmed from fibromyalgia, among other conditions. (Doc. 14 at 2.) Her request for benefits

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

was denied and the decision upheld on reconsideration. (Tr. 24.) Rushing then exercised her right to a hearing before an Administrative Law Judge (ALJ), who issued the unfavorable decision now under review. (Tr. 24-41.)

The ALJ reached his decision by applying the standard evaluation process. An individual claiming disability benefits must prove she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity [("RFC")] assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

At step two, the ALJ found Rushing had several "severe" conditions, one of which was fibromyalgia. (Tr. 26.) That said, at step three, he determined her impairments did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P[.]" (Tr. 27, 28.) Thus, the

ALJ had to assess Rushing's RFC before resolving her ability to work at steps four and five.

> As for Rushing's RFC, the ALJ found she retained the ability to:
>
>> lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours and eight hour workday; stand and/or walk for six hours and eight hour workday; no operation of foot controls; occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, and crouching; no crawling; frequent forward, lateral, and overhead reaching; frequent handling and fingering; must avoid concentrated exposure to extreme cold and extreme heat; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carry out simple tasks while maintaining attention and concentration for two hours at a time before requiring a regularly scheduled break; goal-based production work measured by end result not pace work; low stress work defined as only occasional decision-making and only occasional changes in the work setting; occasional interaction with coworkers and supervisors; and no interaction with the public.

(Tr. 31.) In assessing Rushing's fibromyalgia, the ALJ also utilized the "pain standard." (Tr. 31.) The pain standard applies "[w]here […] a claimant is trying to establish a disability through her own testimony of pain and subjective symptoms." *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 141 (11th Cir. 2019). This "requires the claimant show: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical

condition can reasonably be expected to give rise to the claimed pain." *Id.* "If a claimant testifies as to her subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." *Id.* "This means that an ALJ's decision must rely on a factual basis for discounting a claimant's testimony regarding his or her subjective symptoms related to fibromyalgia, which can include a lack of proportionality between the Plaintiff's complaints of pain and the objective evidence, as well as inconsistencies in the Plaintiff's statements and actions." *Chambers v. Saul*, No. 18-24634-CIV, 2020 WL 4757336, at *8 (S.D. Fla. Apr. 29, 2020).

On this point, the ALJ found:

> After careful consideration of the evidence, the undersigned finds the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not bolstered by her treatment history or medical findings outlined below.

(Tr. 31.) The "medical evidence and other evidence" cited by the ALJ included objective evidence, such as observations that Rushing "had 5/5 strength in her upper and lower extremities" and a normal walking gait, as well as subjective evidence, including statements Rushing made to her doctors about her symptoms, daily activities, and pain. (Tr. 36-37.) Thus, the ALJ concluded that

4

while Rushing may have impairments "that could have been anticipated to produce a certain amount of limitations during the period at issue, [she] has not demonstrated limitations in excess of those accounted for in the [RFC]." (Tr. 36.)

Based on the entire record, which included vocational expert testimony, the ALJ concluded Rushing could not perform her past relevant work but could perform other sedentary jobs, such as routing clerk, small product assembler, and office helper. (Tr. 41.) Because Rushing could work, the ALJ found her not disabled as that term is defined in this context. (*See id.*) This appeal followed.

## II. Standard of Review

"It is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021). Therefore, "[r]eview of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied." *Holland v. Comm'r of Soc. Sec.*, No. 2:21-CV-858-KCD, 2023 WL 2300593, at *2 (M.D. Fla. Mar. 1, 2023). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). As the

5

Supreme Court has explained, "whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Id*.

### III. Analysis

On appeal, Rushing contends that "[t]he ALJ failed to account for the total limiting effects of [her] severe physical and mental impairments" when determining her RFC. (Doc. 14 at 1.) At bottom, she believes the evidence "describes greater limitations than set forth in the ALJ's RFC finding." (*Id.* at 11.) According to Rushing, the ALJ improperly rejected her "self-described limitations and Dr. Aranguiz's opinion" by mischaracterizing her daily

6

activities and focusing too much on the objective evidence. (*Id*. at 14-15.) As a result, remand is needed to correct an RFC that is so "defective" it cannot be considered "substantial evidence supporting an ALJ's denial." (*Id*. at 12, 18.)

When considering an application for disability resulting from fibromyalgia, the ALJ will perform the same five-step evaluation process they would otherwise apply. Yet because a claimant with fibromyalgia may not display objective symptoms, the Social Security Administration enacted SSR 12-2p, which "informs ALJs in how to consider fibromyalgia in the five-step process." *Meza v. Comm'r of Soc. Sec.*, No. 6:21-CV-222-DNF, 2022 WL 3025971, at *4 (M.D. Fla. Aug. 1, 2022). "Normally, a claimant's statements about her pain or other symptoms will not alone establish disability; there must also be objective medical evidence." *Marcus v. Comm'r of Soc. Sec.*, No. 6:21-CV-1745-KCD, 2023 WL 1860638, at *3 (M.D. Fla. Feb. 9, 2023). But given that fibromyalgia may not present objective symptoms, an ALJ may not reject it as an impairment based on a lack of objective evidence. *Gebauer v. Saul*, 801 F. App'x 404, 410 (7th Cir. 2020).

SSR 12-2p is largely concerned with step two of the five-step process. *See Tillman v. Kijakazi*, No. 1:21-CV-79-AW-MJF, 2022 WL 3594903, at *1 (N.D. Fla. Aug. 23, 2022). The rule "does not limit the evidence an ALJ can consider in evaluating the severity of fibromyalgia for purposes of determining a residual functioning capacity." *Gebauer*, 801 F. App'x at 410. Indeed, SSR 12-

7

2p states that objective evidence *is relevant* to the ALJ's analysis of a fibromyalgia claim:

> As with any claim for disability benefits, before we find that a person with an MDI of [fibromyalgia] is disabled, ***we must ensure there is sufficient objective evidence*** to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.
>
> […]
>
> As in all claims for disability benefits, ***we need objective medical evidence to establish the presence of an MDI***. When a person alleges [fibromyalgia], longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment.

SSR 12-2p (emphasis added).

At step two of his analysis, the ALJ determined Rushing had several "severe" conditions, including fibromyalgia. (Tr. 26.) Once that was determined, the ALJ did not err by considering objective evidence in steps three, four, and five of his analysis. *See, e.g.*, *Gebauer*, 801 F. App'x at 410. Any broadside attack Rushing makes about the ALJ relying on objective evidence is simply misplaced.

Next, Rushing attacks what she perceives as the ALJ's overemphasis on certain portions of the objective evidence or record in evaluating her fibromyalgia. (*See* Doc. 14 at 19-20.) But this argument impermissibly invites

8

the Court to act as a fact finder. Because "[i]t is solely the province of the [ALJ] to resolve conflicts in the evidence and assess the credibility of witnesses," the Court must refuse to reweigh the evidence or substitute its judgment for that of the ALJ. *Bloodsworth*, 703 F.2d at 1239; *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015). Even if the evidence preponderates against the Commissioner, her decision must be affirmed if it is supported by substantial evidence. *Bloodsworth*, 703 F.2d at 1239. The ALJ has met this low bar. His decision contains a robust summary of the evidence and explanations for his findings at each step of the analysis. More importantly, Rushing has failed to show there is an "absence of substantial evidence supporting the ALJ's conclusion." *Id*. Rushing may believe the ALJ should have paid more attention to the things she cannot do (e.g., although she can feed her dogs, she cannot bathe them), but the ALJ's emphasis on the daily activities she can perform does not warrant reversal.

Rushing is also critical of how the ALJ rejected the opinion of her rheumatologist, Dr. Aranguiz. (Doc. 14 at 17-19.) In rejecting Dr. Aranguiz's opinion, the ALJ noted that he did not find her conclusions persuasive because "they are not supported by the physical examinations of record from this source[.]" (Tr. 39.) The ALJ then detailed how Dr. Aranguiz's opinion fails to match the tests she performed. Rushing makes much ado about the objective evidence cited by the ALJ. In doing so, she misses the point. The objective

9

evidence is not meant to show that she does not have fibromyalgia, it is meant to demonstrate that she can work despite her condition.

Even so, there is substantial evidence supporting the ALJ's decision to reject Dr. Aranguiz's opinion. To begin, Dr. Aranguiz's Residual Functioning Questionnaire cites the Functional Capacity Evaluation performed by Dawn Root, PT. (*See* Tr. 2359.) But Ms. Root concluded that "[b]ased on today's testing, it is unlikely that Ms. Rushing will be able to work in a competitive environment on a consistent daily basis due to **her perceived level of disability**." (Tr. 2338 (emphasis added).) It appears Ms. Root used the word "perceived" because she could not determine Rushing's work ability status—due to Rushing's refusal to perform some portions of the test and her inability to provide valid results for other portions. (*See id*.) There are also contradictions between Root's notes and the conclusions Dr. Aranguiz drew from the testing that cast doubt on the persuasiveness of Dr. Aranguiz's opinions. For instance, it is Dr. Aranguiz's opinion that Rushing cannot walk a city block. (Tr. 2358.) This appears to be based upon Root's observation that Rushing could only ambulate for forty-six seconds, covering thirty-six feet, during her evaluation. (Tr. 2339.) But Root also noted that Rushing hustled out of the clinic after the evaluation, "ambulat[ing] at least 418 feet and for [one hundred and eighty-three seconds,] walking quickly to cross 3 lines of traffic twice until out of view of the examiner." (Tr. 2338.) Rushing also

10

underperformed when asked to stand during her evaluation. She "start[ed] moaning immediately" and "lean[ed] on the table with her forearms," remaining on her feet for only sixty-four seconds. (Tr. 2339.) Yet, when leaving the clinic, she was observed to stand at an intersection for more than ninety seconds, without using her cane. (*Id.*) As another example, Dr. Aranguiz opines that Rushing cannot perform any lifting. (Tr. 2358.) But Rushing herself admits she can pick up her thirty-five pound dog. (Tr. 401.) These are just examples, but they show cracks in the foundation of Dr. Aranguiz's opinions.

Finally, Rushing balks at the ALJ's mention of her refusal to enroll in pain management or emergent care treatments in connection with his discussion of Dr. Aranguiz's opinion. (Doc. 14 at 20-22.) The Court need not take long with this argument. Even if Rushing's refusal to take measures to alleviate her neuropathic pain is not relevant to Dr. Aranguiz's opinion, Rushing has not shown that its consideration was anything but harmless. As discussed above, substantial evidence supports the ALJ's decision to reject Dr. Aranguiz's opinion. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875 (11th Cir. 2013) ("When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."). Thus, any error in the ALJ's consideration of this evidence seems to be irrelevant.

## IV. Conclusion

Considering the record as a whole, the Court is satisfied the ALJ followed the applicable regulations and based his conclusions on substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision and directs the Clerk to enter judgment for the Commissioner and close the file.

**ORDERED** in Fort Myers, Florida on November 1, 2024.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record